

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 3:07CR 154 |
| ) | |
| NATHAN FRANCIS CARROLL ) | |
| (Counts 1-29) ) | Wire Fraud Conspiracy |
| ) | (18 U.S.C. § 1349) |
| and ) | (Count 1) |
| ) | |
| ROGER CHARLES DAY, JR., ) | Wire Fraud |
| (Count 1) ) | (18 U.S.C. § 1343) |
| ) | (Counts 2-23) |
| Defendants. ) | |
| ) | Aggravated Identity Theft |
| ) | (18 U.S.C. § 1028A) |
| ) | (Counts 24-29) |
| ) | |
| ) | Forfeiture Allegation |
| ) | 18 U.S.C. § 981(a)(1)(C) & |
| ) | 28 U.S.C. § 2461(c) |

## INDICTMENT

April 2007 Term – at Richmond

THE GRAND JURY CHARGES THAT:

### COUNT 1
(Conspiracy – Wire Fraud)

A. Introduction

At times relevant to this Indictment:

1. The Defense Logistics Agency (hereinafter, "DLA"), a component of the Department of Defense (hereinafter, "DoD"), was located in Fort Belvoir, Virginia, within the Eastern District of Virginia. The DLA was a component of the DoD that

provided wide-ranging worldwide logistics support to the DoD by supplying the U.S. military with equipment, supplies and services. U.S. military units requested equipment and parts from the DLA to assist in the repair and maintenance of U.S. military aircraft, vehicles, naval vessels and weapons systems, among other things. Requests received from U.S. military units were filled through purchase orders awarded to DoD contractors through one of three DLA buying centers: the Defense Supply Center Richmond located in Richmond, Virginia, in the Eastern District of Virginia (hereinafter, "DSCR"); the Defense Supply Center Columbus located in Columbus, Ohio (hereinafter, "DSCC"); and the Defense Supply Center Philadelphia located in Philadelphia, Pennsylvania. Some of the items procured by DLA were called critical applications items, which were defined as items essential to weapons systems performance or operation or the preservation of life or safety of operational personnel.

2.  The DSCC maintained a Product Testing Center to perform scientific evaluations of products and related services, including product testing and technical support.

B. The Procurement Process

3.  The DLA solicited offers from and entered into contracts with various vendors, also referred to as contractors, to support DLA requirements. DLA solicitations were posted on the Defense Internet Bid Board System (hereinafter, "DIBBS") maintained by the DSCC for searching, viewing and downloading via the Internet. Solicitations were also automatically emailed to contractors that elected to receive them. All Requests for Quotation (hereinafter "RFQ") were available on DIBBS, which allowed secured electronic quoting on DLA RFQs valued at $100,000 or less. Although other

RFQs may have permitted quoting by mail, facsimile or telephone, quotes on automated solicitations were required be submitted through DIBBS. In addition, to be eligible for such an award the contractor must have quoted in strict conformance with solicitation requirements.

4. Individuals or businesses that intended to apply for DoD awards were required to be registered in the Central Contractor Registry and to provide, among other things, a company name, address, telephone number and email address used for electronic correspondence with the DLA. Vendors were required to agree to receive payment on all federal contracts via Electronics Funds Transfer (hereinafter, "EFT"), from the Defense Finance and Accounting Service (DFAS), another DoD agency. Vendors that successfully completed the registration process obtained a five-digit Commercial and Government Entity code (hereinafter, "CAGE code") used for identification purposes when applying for DoD awards.

5. Using their assigned CAGE code and password, contractors logged into DIBBS and completed an electronic quote form that was submitted to the DLA in response to solicitations. Unless an item was described by drawings or specifications, the contractor was required to input the manufacturer's CAGE code and part number of the item being offered as listed in the solicitation.

6. A contractor's quote was required to indicate that the contractor would comply with the government's requirements. Government employees located at the responsible buying center often reviewed quotes submitted by contractors and communicated with contractors concerning details of quotes. When a contractor indicated in its quote that it would comply with the government's requirements, a

purchase order was awarded to the contractor and notification of the award was sent to the contractor via email.

7. Purchase orders contained the terms and conditions of the government's order, including the requirements for the parts to be supplied. Purchase orders also designated whether the part was considered a critical application item. For purchase orders referred to in this Indictment, the DLA specified that the items supplied to the DoD were to be manufactured in accordance with the stated contractual specifications by an approved manufacturer and specific part numbers, with only the specified manufacturer(s) and part number(s) being acceptable, or by reference to drawings or specifications which identified a specific manufacturer's parts as the only acceptable item to meet the government's requirements.

8. Upon shipment or delivery of the supplies, the contractor submitted an electronic invoice or DoD Form 250 (hereinafter, "DD250"), which represented that the parts shipped met the government specifications as set forth in the purchase order. Upon receipt of the invoice, DFAS paid the contractor electronically.

C. The Defendants

9. Defendant NATHAN FRANCIS CARROLL was a resident of Lake Hopatcong, New Jersey.

10. Defendant ROGER CHARLES DAY, JR. was a resident of Sparta, New Jersey and Mexico.

D. Object of the Conspiracy

11. The object of the conspiracy was to execute a scheme and artifice to defraud the DoD, and to obtain money from the DoD by means of false and fraudulent

pretenses, representations, and promises, by inducing DoD to make payments to the companies described below for nonconforming and inferior parts. A further object of the conspiracy was to conceal the true identities and associations of the conspirators responsible for bidding and obtaining the awards, since some of the conspirators had been debarred from doing any contracting with the government.

E. <u>The Companies</u>

12. To execute the scheme and artifice to defraud DoD, the defendants used the following contractors, all of which had been registered with the Central Contractor Registry and had been assigned CAGE codes.

13. Bruce Parts Sales, 532 West 50th Street, Suite 1BR, New York, New York, began conducting business on April 24, 2006. From July 13, 2006, through December 14, 2006, it acquired 132 DLA purchase orders worth $1,031,685, and obtained payment for 26 contracts totaling $500,488.

14. Brulato Equipment Sales, 10501 8th Avenue, NE, Seattle, Washington, began conducting business on February 22, 2006. From April 11, 2006, through November 29, 2006, it acquired 79 DLA purchase orders worth $985,905, and obtained payment for 23 contracts totaling $551,390.

15. Canmerch, 720 King Street, Suite 427, Toronto, Canada, began conducting business on September 8, 2005. From December 16, 2005, through February 13, 2006, it acquired 11 DLA purchase orders worth $48,472, and obtained payment for 7 contracts totaling $27,726.

16. Carlyle Group CA, 14781 Memorial Drive, Houston, Texas, began conducting business on July 25, 2006. From November 7, 2006, through March 6, 2007,

it acquired 66 DLA purchase orders worth $643,226, and obtained payments totaling $18,928.

17. Eakles Defense Equipment & Parts, 4951 Netarts Highway West, Tillamook, Oregon, began conducting business on February 21, 2006. From April 10, 2006, through August 9, 2006, it acquired 83 DLA purchase orders worth $887,250, and obtained payment for 33 contracts totaling $514,033.

18. General Dynamics CA, 8721 Santa Monica Boulevard, Suite 1370, Los Angeles, California, began conducting business on May 13, 2006. From July 12, 2006, through January 18, 2007, it acquired 134 DLA purchase orders worth $1,209,853, and obtained payments totaling $819,729.

19. GSMediation, 106 Pearson Avenue, Toronto, Canada, began conducting business on March 2, 2005. From August 1, 2005, through February 4, 2006, it acquired 86 DLA purchase orders worth $744,352, and obtained payment for 27 contracts totaling $447,842.

20. Harris Corporation, 8345 N.W. 66th Street, Suite 7659, Miami, Florida, began conducting business on July 25, 2006. From September 14, 2006, through January 11, 2007, it acquired 214 DLA purchase orders worth $1,755,856, and obtained payments totaling $507,279.

21. Industry Source, LLC, 238A Route 206, Andover, New Jersey, began conducting business on July 1, 2004. From August 31, 2005, through January 3, 2006, it acquired 64 DLA purchase orders worth $488, 853.

22. KMI Logistics, 3 William Street, Paris, Ontario, Canada, began conducting business on February 23, 2006. From May 8, 2006, through July 31, 2006, it

acquired 22 DLA purchase orders worth $273,284, and obtained payment for 9 contracts totaling $155,563.

23.     Ratheon Spares, 848 North Rainbow Boulevard, Las Vegas, Nevada, began conducting business on May 11, 2006. From July 13, 2006, through September 21, 2006, it acquired 12 DLA purchase orders worth $90,262.

24.     Rockwell CA, 5715 Will Clayton, #1865, Humble, Texas, began conducting business on May 15, 2006. From August 28, 2006, through March 7, 2007, it acquired 6 DLA purchase orders worth $17,249.

25.     Ultra Defense Parts Intercontinental International Consortium, 154 Schwarz Boulevard, Lake Hopatcong, New Jersey, began conducting business on November 23, 2005. From December 20, 2005, through March 14, 2006, it acquired 31 DLA purchase orders worth $262,590, and obtained payment for 15 contracts totaling $148,769.

F. <u>Manner and Means of the Conspiracy and Scheme and Artifice</u>

26.     It was part of the conspiracy and scheme and artifice to defraud that the defendants and their co-conspirators would and did take the following actions.

27.     The defendants and their co-conspirators would and did bid on solicitations requested by the DLA, called RFQs, using the internet DIBBS system.

28.     The defendants and their co-conspirators would and did conceal and attempt to conceal their identities and associations from the DLA by forming the entities named in paragraphs 12-25 of this Indictment, and by using those entities in bidding on RFQs.

29. The defendants and their co-conspirators would and did make false and fraudulent bids, in that they would and did falsely and fraudulently represent that they would supply the correct parts specified by the DLA in the RFQs.

30. The defendants and their co-conspirators would and did falsely label packaging for parts they were to supply on purchase orders so as to indicate that the correct parts were inside.

31. The defendants and their co-conspirators would and did bid on government contracts and purchase orders for which the DLA did not require parts inspections at the contractor's place of business.

32. The defendants and their co-conspirators would and did supply and cause to be supplied non-conforming and inferior parts to DLA parts depots, instead of the parts required under the terms of the purchase orders and other documents that constituted the offer and agreement made with the DLA, through the entities described in paragraphs 12-25 of this Indictment.

33. The defendants and their co-conspirators would and did submit, and cause to be submitted, invoices for payments after shipping nonconforming parts, which falsely represented that the correct parts had been supplied pursuant to purchase order.

34. The defendants and their co-conspirators would and did provide routing information to the DLA so that payments would be made by DFAS via EFT to bank accounts that the defendants and their co-conspirators controlled.

35. When the DLA requested proof that the entities described in paragraphs 12-25 of this Indictment had purchased and intended to supply the correct parts from the approved manufacturers in the RFQs, the defendants and their co-conspirators would and

did submit, and cause to be submitted, communications and documents which falsely represented that the correct parts had been purchased.

36. When the DLA debarred one of the entities described in paragraphs 12-25 of this Indictment from doing further business with the DLA, the defendants and their co-conspirators would and did discontinue bidding on government contracts through that entity, and would instead use another contractor in its place.

37. The defendants would and did cause purchase orders to be awarded to the entities described in paragraphs 12-25 of this Indictment, which had a total value of approximately $8.4 million.

38. In an effort to conceal proceeds of the scheme and to prevent DoD's rightful recovery of the funds, the defendants would and did transfer proceeds of the scheme from bank accounts that received DoD payments to other bank accounts and to the purchase of gold and other assets.

G. The Offense

39. Beginning in or about August 2005 and continuing through the date of this Indictment, in the Eastern District of Virginia and elsewhere, the defendants, NATHAN FRANCIS CARROLL and ROGER CHARLES DAY, JR., did conspire with each other and with other persons known and unknown to the Grand Jury to commit Wire Fraud in violation of Title 18, United States Code, Section 1343, namely, having devised a scheme and artifice to defraud the United States Department of Defense, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to willfully transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

(All in violation of Title 18, United States Code, Section 1349.)

## COUNTS 2-23
(Wire Fraud)

40. The allegations in paragraphs 1-39 of this Indictment are realleged.

41. On or about the dates stated, within the Eastern District of Virginia and elsewhere, the defendant, NATHAN FRANCIS CARROLL, having devised and intending to devise a scheme and artifice to defraud the United States Department of Defense, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did willfully transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice, as set forth below:

| Count | Date | Type of Wire Communication | Description |
|---|---|---|---|
| 2 | 2/26/06 | email | to DLA Associate General Counsel |
| 3 | 3/2/06 | email | to DSCR Contracting Officer |
| 4 | 3/14/06 | email | to DLA Associate General Counsel |
| 5 | 3/29/06 | electronic quote | to DSCR Acquisition Specialist – CARROLL purported to be Keith Brulato |
| 6 | 3/31/06 | electronic quote | to DSCR Acquisition Specialist – CARROLL purported to be Keith Brulato |
| 7 | 4/5/06 | electronic quote | to DSCR Contract Specialist – CARROLL purported to be Carl Eakles |
| 8 | 4/6/06 | email | to DSCR employee – CARROLL purported to be Carl Eakles |
| 9 | 5/5/06 | telephone call | to DSCR Associate General Counsel – CARROLL purported to be Keith Brulato |
| 10 | 5/5/06 | email | to DSCR Contracting Officer – CARROLL purported to be Keith Brulato |
| 11 | 5/17/06 | telephone call | to DSCR employee – CARROLL purported to be Carl Eakles |
| 12 | 6/19/06 | email | to DSCR Contracting Officer – CARROLL purported to be Keith Brulato |
| 13 | 6/19/06 | telephone call | to DSCR Contracting Officer – CARROLL purported to be Keith Brulato |

| Count | Date | Type of Wire Communication | Description |
|---|---|---|---|
| 14 | 6/19/06 | telephone call | to DSCR Post Award Administrator - CARROLL purported to be Carl Eakles |
| 15 | 6/19/06 | email | to DSCR Post Award Administrator - CARROLL purported to be Carl Eakles |
| 16 | 7/24/06 | electronic quote | to DSCR Acquisition Specialist - CARROLL purported to be Steven Burton |
| 17 | 9/2/06 | electronic quote | to DSCR Contracting Officer – CARROLL purported to be Patrick McGlinch |
| 18 | 9/9/06 | electronic quote | to DSCR Acquisition Specialist - CARROLL purported to be Patrick McGlinch |
| 19 | 9/12/06 | email | to DSCR Contracting Officer – CARROLL purported to be Keith Brulato |
| 20 | 11/3/06 | email | to DSCR employee – CARROLL purported to be Patrick McGlinch |
| 21 | 1/3/07 | facsimile | to DSCR Acquisition Specialist – CARROLL purported to be Steven McFadden |
| 22 | 1/29/07 | email | to DSCR Contracting Officer – CARROLL purported to be Patrick McGlinch |
| 23 | 2/9/07 | email | to DSCR Contracting Officer – CARROLL purported to be Patrick McGlinch |

(All in violation of Title 18, United States Code, Section 1343.)

## COUNTS 24-29
(Aggravated Identity Theft)

42. The allegations in Paragraphs 1-41 of this Indictment are realleged.

43. On or about the dates stated, within the Eastern District of Virginia and elsewhere, the defendant, NATHAN FRANCIS CARROLL, during and in relation to certain felony wire fraud violations previously alleged in this Indictment, did knowingly use, without lawful authority, means of identification of other persons, as set forth below:

| Count | Date | During Felony Wire Fraud Violation | Person Whose Means of Identification CARROLL Used |
|---|---|---|---|
| 24 | 4/5/06 | Count 7 | Carl Eakles |
| 25 | 5/5/06 | Count 10 | Keith Brulato |
| 26 | 6/19/06 | Count 13 | Keith Brulato |
| 27 | 6/19/06 | Count 14 | Carl Eakles |
| 28 | 7/24/06 | Count 16 | Steven Burton |
| 29 | 11/3/06 | Count 20 | Patrick McGlinch |

(All in violation of Title 18, United States Code, Section 1028A.)

### FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, the defendants are hereby notified that, if convicted of the offenses alleged in Counts 1 through 23 of this Indictment, they shall forfeit to the United States their interest in any property, real or personal, which constitutes or is derived from proceeds traceable to the alleged violations, including but not limited to:

- The sum of $3,696,235 as a monetary judgment, representing the proceeds of the offenses charged in Counts 1 through 23;

The sum of $5493 cash, seized from defendant CARROLL on or about March 9, 2007;

Three PAMP S.A. Switzerland 10 oz. gold bars, CH-6874 Castel S. Pietro, certificate numbers 8068, 8070, and 8071;

The contents of Commerce Bank accounts ending 6842, 7361, 6933, and 6941, held in the names of Nathan F. Carroll, Keith J. Brulato, Carl E. Eakles, Vulcan Finance Company, Ultra Defense Parts Intercontinental International Consortium, Brulato Equipment Sales, and/or Eakles Defense Equipment and Parts; and

The real property and improvements located at 154 Schwarz Boulevard, Lake Hopatcong, New Jersey (Morris County).

(All in violation of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).)

A TRUE BILL:

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

**Foreperson**

CHUCK ROSENBERG
United States Attorney

John S. Davis
Assistant U.S. Attorney