IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,
                    Plaintiff,

v.                                                           Crim. Case No. 3:07cr154-03-JAG

ROGER C. DAY, JR.,
                    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the defendant's motion to set aside his conviction on jurisdictional grounds (Dk. Nos. 313, 314) filed September 19, 2011.  The government filed a response on October 4, 2011 (Dk. No. 327).  The matter is now ripe for review.  As the motion has been filed *pro se*, the Court will construe the claims liberally to allow for the development of a potentially meritorious claim.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978).  The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process.

For the reasons stated herein, the Court hereby denies the defendant's motion.

### I. Background

Roger Day, Jr. ("Day") was accused of defrauding the United States Department of Defense ("DOD") through wire fraud and money laundering, converting the fraudulently-obtained funds into gold, and smuggling it into Mexico.  From 2005 through early 2007, Day, along with several co-conspirators, created sham companies meant to look like legitimate suppliers of replacement parts for the military.  They used automated bidding software to allow

the companies to win numerous contracts, filled the contracts with cheap, non-conforming parts, and converted many of the contract payments into gold bars and coins. When the DOD debarred one of Day's sham companies, he would create another using a false name and begin the bidding process anew. By April of 2007, however, Day's scheme was exposed, and the government filed an indictment against him and another conspirator, Nathan F. Carroll. (*See* Dk. No. 17.)[1] Federal investigators and Mexican authorities ultimately apprehended Day in Cancun, Mexico in July 2008.

From July 2008 through late 2010, Day fought his extradition to the United States and remained imprisoned in several Mexican facilities, including one known as "Villa Aldama." Following the approval of his extradition by the Mexican Secretary of Foreign Affairs (the "Secretary") in late December 2010, Day was convicted of wire fraud, conspiracy to commit wire fraud, money laundering, conspiracy to commit money laundering, and conspiracy to smuggle goods on August 25, 2011. (*See* Jury Verdict, Dk. Nos. 299, 300.) On September 19, 2011, Day filed the instant motion, contesting the Court's jurisdiction based on eighteen alleged violations—by the Secretary and U.S. officials—of the United States-Mexico Extradition Treaty (the "Treaty"). *See Extradition Treaty*, May 4, 1978, U.S.-Mexico, 31 U.S.T. 5059.

## II. Discussion

For clarity purposes, the Court will group Day's eighteen claims into four categories: (1) rule of specialty violations; (2) various pre-extradition violations of Mexican law; (3)

---

[1] Day was ultimately extradited, tried, and convicted on Counts 1 (conspiracy to commit wire fraud), 2-4 (conspiracy to engage in international money laundering), 8 (conspiracy to engage in international money laundering), and 9 (conspiracy to smuggle goods) of the government's Fourth Superseding Indictment (the "Indictment"). (*See* Dk. No. 141.) The Mexican Secretary of Foreign Affairs denied extradition on Counts 5-7 (aggravated identity theft) and 10 (obstruction of justice).

concealment and inappropriate actions by U.S. agents; and (4) torture and mistreatment of Day while in Mexican custody.

### 1. Category 1- Rule of Specialty Violations

Claims 1, 9, 13, and 15 allege various rule of specialty violations pursuant to Article 17 of the Treaty. *See Extradition Treaty*, U.S.-Mexico, May 4, 1978, art. 17, 31 U.S.T. 5059. The principle of specialty, first recognized by the Supreme Court in *United States v. Rauscher*, 119 U.S. 407, allows the United States to try an extradited person only on the offenses for which extradition was granted. *See United States v. Rauscher*, 119 U.S. 407, 419-20 (1886)[2]; *see also United States v. Andonian*, 29 F.3d 1432, 1435 (9th Cir. 1994) ("The doctrine is based on principles of international comity: to protect its own citizens in prosecutions abroad, the United States guarantees that it will honor limitations placed on prosecutions in the United States."). Importantly, the Secretary granted extradition on Counts 1, 2–4, 8, and 9 of the Indictment (the "Extradited Counts") and denied extradition on Counts 5-7 (aggravated identity theft) and 10 (obstruction of justice).[3]

In claim 1, Day contends that because the Secretary denied extradition on Count 10, and as that count included the allegations, by reference, of the previous nine counts, Day was,

---

[2] The *Rauscher* Court held:

> [A] person who has been brought within the jurisdiction of the court, by virtue of proceedings under an extradition treaty, can only be tried for one of the offenses described in that treaty, and for the offense with which he is charged in the proceedings for his extradition, until a reasonable time and opportunity have been given him, after his release or trial upon such charge, to return to the country from whose asylum he had been forcibly taken under those proceedings.

*Rauscher*, 119 U.S. at 430.

[3] Notably, the Fourth Circuit has not yet decided whether an individual defendant—as opposed to a state party to an extradition treaty—has standing to raise the issue of a violation of the principle of specialty. *See United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992).

therefore, unlawfully tried on all of the Extradited Counts. This claim is facially meritless, as the Secretary found that extradition was proper on Counts 1, 2-4, 8, and 9. Day's attempt to color the allegations in Count 10 as tainted then transfer that taint to the Extradited Counts is misguided and baseless.

Similarly, in claims 9 and 13, Day argues that certain evidence supporting Counts 5-7 and 10 was unlawfully used to obtain his conviction on the Extradited Counts. The principle of specialty, however, has no bearing on what evidence can be used at trial, so long as the defendant is not tried on a count excluded from the extradition order. *See United States v. Bowe*, 221 F.3d 1183, 1191 (11th Cir. 2000) (approving introduction of evidence relating to counts for which extradition had been denied to prove conspiracy count, since rule of specialty "d[id] not affect the scope of proof admissible at trial for the charges for which extradition was granted," nor did it "alter the forum country's evidentiary rules"); *United States v. Saccoccia*, 58 F.3d 754, 767 (1st Cir. 1995); *United States v. Flores*, 538 F.2d 939, 944 (2d Cir. 1976). As the Second Circuit has explained, "[t]he international doctrine of specialty . . . does not purport to regulate the scope of proof admissible into evidence in the judicial forum of the requisitioning state." *Flores*, 538 F.2d at 944; *see also United States v. Alvarez-Moreno*, 874 F.2d 1402, 1413-14 (11th Cir. 1989) (the rule of specialty has no bearing on the court's admission of evidence pursuant to Fed. R. Evid. 404(b)).[4]

Finally, in claim 15, Day contends that, while forfeiture claims were made in the Indictment, such allegations were not included in the Secretary's extradition order and, therefore, cannot be enforced against him. Yet, the forfeiture in this case was simply a consequence of

---

[4] Furthermore, the principle of specialty has no bearing on the evidence considered by a court in the sentencing of an extradited defendant. *See United States v. Davis*, 954 F.2d 182, 187 n.2 (4th Cir. 1992).

Day's conviction, not a charge on which he was tried. *See Libretti v. United States*, 516 U.S. 29, 39, 116 S. Ct. 356, 363 (1995) ("[C]riminal forfeiture [i]s an aspect of punishment imposed following conviction of a substantive criminal offense."); *Saccoccia*, 58 F.3d 754, 783 (1st Cir. 1995) ("[C]riminal forfeiture is a punishment, not a separate criminal offense."); *see also United States v. Sandini*, 816 F.2d 869, 875 (3d Cir. 1987) (same). "Because criminal forfeiture is not a substantive charge against the defendant, the doctrine of specialty is not violated where, as here, a defendant is subjected to criminal forfeiture charges with respect to which he was not formally extradited." *United States v. Knowles*, 390 Fed. Appx. 915, 935-936 (11th Cir. 2010) (citing *Saccoccia*, 58 F.3d at 784 (holding that appellant was properly subjected to a forfeiture order, even though extradition was not specifically granted with respect to the forfeiture charges, because "forfeiture is neither a free-standing criminal offense nor an element of a racketeering offense under RICO, but is simply an incremental punishment for that proscribed conduct")).

The Court will dismiss defendant's claims 1, 9, 13, and 15.

### 2. Category 2 - Violations of Mexican Law

Day's second group of claims, 2–4, 7–8, 10–12, 14, and 17–18, allege violations of Mexican law or criminal procedure. Specifically, Day contends that Articles 3, 6, 10, and 13 of the Treaty were violated when:

(1) He was extradited and tried without a showing of *corpus delicti* (i.e. the probability of responsibility or a form of probable cause), as required for all criminal defendants in Mexico (Claim 2);

(2) The Secretary failed to properly evaluate the evidence against Day (Claim 3);

(3) The Secretary failed to evaluate the legality of the Day's arrest warrant (Claim 4);

(4) Day was subjected to double jeopardy because his sham companies had already been debarred by the Defense Logistics Agency in the United States (Claim 7);

(5) The DOD failed to submit a *querella* against him as required for prosecution in Mexico (Claims 8 and 14);

(6) Prior to the government's extradition request, Day was incarcerated for twenty-six months longer than the sixty days he could be held under the Treaty (Claim 10);

(7) Day was held for eight months at a Mexican prison, Villa Aldama, to which he was illegally transferred (Claim 11);

(8) The Secretary replaced a 2008 extradition order with its 2010 order without the requisite authority (Claim 12);

(9) Day was denied a "proof and absolution" decision from a natural judge in Mexico, a requirement before commitment for trial in Mexico (Claim 17); and

(10) The requirements of comity set forth in *Hilton v. Guyot*, 159 U.S. 113 (1895) were not met (Claim 18).

Ultimately, each of these claims is meritless as the decision of a foreign authority to extradite is final. *See Johnson v. Browne*, 205 U.S. 309, 316 (1907) ("[w]hether the crime came within the provision of the treaty was a matter of discretion of the [Canadian] authorities and such decision was final by the express terms of the treaty itself."); *see also United States v. Van Cauwenberghe*, 827 F.2d 424, 429 (9th Cir. 1987) (*Johnson* "makes a broad[] statement regarding the proper deference to be accorded a surrendering country's decision on extraditability"); *United States v. Medina*, 985 F. Supp. 397, 401 (S.D.N.Y 1997) (*Johnson's* language "has been interpreted to stand for the broader proposition that a foreign government's decision to extradite an individual . . . is not subject to review by United States courts."). All determinations related to the proper application of Mexican law and procedure must be left to the surrendering state, not this Court. *See Medina*, 985 F. Supp. at 400; *Reyes-Vasquez v. United States Att'y Gen.*, 2007 WL 3342759 (M.D. Pa. Nov. 8, 2007) (unpublished) (dismissing habeas petition challenging extradition to United States from Dominican Republic on ground that extradition violated Dominican law). The same principle applies to the Secretary's decision that

6

the United States' extradition request met the terms of the Treaty. *McGann v. United States Bd. of Parole*, 488 F.2d 39, 40 (3rd Cir. 1973) (*Johnson* "precludes any review of the Jamaican court's decision as to the extraditable nature of the offense")

In short, the Secretary and Mexican authorities were fully informed of the counts in the pending Indictment and made a considered judgment to grant extradition, a judgment that should not be reviewed by a United States court. *See Medina*, 985 F.Supp. at 402; *United States v. Billman*, 86 F.3d 1153, 1996 WL 267329, at *3 (4th Cir. 1996) (unpublished) (recognizing that extradition decision of French government was "unreviewable in the courts of the United States").

The Court will dismiss claims 2–4, 7–8, 10–12, 14, and 17–18.

### 3. Category 3 – Allegations against United States Officials

In claims 5, 6 and 16, Day makes several allegations related to improper and illegal actions by U.S. agents and prosecutors. The series of claims seems to suggest that the government engaged in a racketeering enterprise to conceal exculpatory facts from the Secretary and Mexican authorities.

In Claim 5, Day argues that Assistant U.S. Attorney John Davis ("Davis") and Special Agent Shane O'Neill ("O'Neill") of the Defense Criminal Investigative Service testified to the Secretary that government contracts were at issue in Day's criminal case. He argues, however, that no contracts existed because the DOD waived the signature requirement for them. The Court finds this claim meritless. Day bid on government contracts, won the bids, supplied non-conforming parts, submitted invoices to the government for payment, and received payment. The government's waiver of the signature requirement through the electronic bidding process has no bearing on whether Day intended to, and did, commit wire fraud.

7

In Claim 6, Day contends that, first, Davis improperly influenced the grand jury and second, that Davis and O'Neill, in affidavits to the Secretary contradicted one another as to when Day fled to Mexico and where Day's attempts to obstruct justice occurred.  As a threshold matter, the Court finds no evidence of prosecutorial misconduct, certainly no evidence that any such misconduct "substantially influenced the decision to indict," and no "grave doubt that the decision to indict was not influenced by the misconduct." *United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995) *overruled on other grounds by United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000).  Second, the alleged, contradictory statements, one asserting that Day fled to Mexico in mid-2005 and the other saying that Day was in Mexico in mid-2005, are not even inconsistent.  Common sense dictates that Day could both travel to and be present in Mexico over the course of "mid-2005."

Finally, Day's claim 16 asserts that O'Neill failed to advise Day of his rights under Mexican law—specifically, the Vienna Convention on Consular Relations, Apr. 24, 1963, 596 U.N.T.S. 261—when he interrogated Day in Cancun, Mexico on July 31, 2008.  Thus, Day argues, any statements made during the interrogation could not be used against him.  He does not, however, allege that O'Neill failed to Mirandize him.  Claim 16, like many others, is subject to the *Johnson* doctrine: if Day thought Mexican law was violated, he should have addressed the issue before the Secretary.  The Mexican extradition authorities made the extradition decision; such decisions are unreviewable by this Court.

Day's alleged concealment violations by U.S. officials present no basis for dismissing the Indictment in this case.  As such, claims 5, 6, and 16 will be dismissed.

#### 4. Category 4- Mistreatment in Mexico

The last category consists of claim 10—Day's assertion that he was tortured and mistreated while in Villa Aldama prison in Veracruz, Mexico, between August 2009 and December 2010. Day contends that the torture and mistreatment violated Mexican law and, therefore, violated Article 13 of the Treaty. Yet, Day fails to identify any provision in the Treaty that provides a remedy in this criminal prosecution for his alleged mistreatment. Absent such a provision, Day's only argument is the due process claim outlined in his pending motion to dismiss (Dk. No. 203). Accordingly, the Court will treat Day's claim 10 as an extension of his motion to dismiss.

Under the Supreme Court's *Ker-Frisbie* doctrine, a court's jurisdiction over a criminal defendant is not affected by the condition or manner in which the defendant is brought before the court. *See Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 199 U.S. 436 (1886); *see also United States v. Alvarez-Machain*, 504 U.S. 655, 670 (1992) (upholding jurisdiction and noting that the doctrine is fully applicable where a defendant was forcibly kidnapped by DEA agents in Mexico). In his motion to dismiss, the defendant urges the Court to apply an exception to the *Ker-Frisbie* rule when the government engages in shocking and outrageous conduct to secure a defendant's presence before a court. *See United States v. Toscanino*, 500 F.2d 267, 275 (2d Cir. 1974) ("due process . . . [requires] a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as a result of the government's deliberate, unnecessary and unreasonable invasion of the accused constitutional rights.").

As stated previously by this Court, however, the *Ker-Frisbie* doctrine has been consistently upheld by the Fourth Circuit, *see Kasi v. Angelone*, 300 F.3d 487, 493-94 (4th Cir. 2002); *United States v. Porter*, 909 F.2d 789, 791 (4th Cir. 1990); *United States v. Wilson*, 721

F.2d 967, 972 (4th Cir. 1983), while the *Toscanino* exception's precedential value has largely been extinguished. *See Matta-Ballesteros v. Henman*, 896 F.2d 255, 263 (7th Cir. 1990) (stating that "*Toscanino* is of ambiguous constitutional origins[;]" therefore, "we cannot create an exclusionary rule for the person of the defendant . . . in the face of repeated re-affirmation by the Supreme Court that no such rule exists."); *United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir. 1986) ("This court has declined to adopt the *Toscanino* approach"); *United States v. Postal*, 589 F.2d 862, 874 n.17 (5th Cir. 1979) ("This Circuit has declined to follow the *Toscanino* rationale"); *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65-66 (2d Cir. 1975) (narrowing *Toscanino* to situations involving "torture, brutality, and similar outrageous conduct," not abduction alone); *see also United States v. Umeh*, 2010 U.S. Dist. LEXIS 137729, at *12 (S.D.N.Y Dec. 30, 2010) ("[T]he courts of other circuits have concluded, in effect, that *Toscanino* is a dead letter, even in the Second Circuit."). Ultimately, regardless of *Toscanino*'s validity or the truth of Day's torture claims, the Court finds no evidence that the United States perpetrated, participated, or even acquiesced in Day's alleged mistreatment in Villa Aldama prison.

As such, claim 10 and Day's motion to dismiss will be denied.

### III. Conclusion

For the foregoing reasons, the Court denies the defendant's motion contesting the Court's jurisdiction (Dk. Nos. 313, 314). The Court also denies the defendant's motion to dismiss (Dk. No. 203) which was provisionally denied on July 12, 2011, (Dk. No. 226) and renewed on July 21, 2011, (Dk. No. 237). An appropriate Order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and send a copy via U.S. mail to the *pro se* defendant.

/s/

John A. Gibney, Jr.
United States District Judge

Date: November 10, 2011
Richmond, VA

11